## STATE v. ROBERT STOCKTON.[1]

April 15, 1932.

No. 28,718.

John Edmund Burke and William H. DeParcq, for appellant.

Henry N. Benson, Attorney General, James E. Markham, Deputy Attorney General, Edward J. Goff, County Attorney, and S. Paul Skahen, Assistant County Attorney, for the state.

[1]Reported in 242 N. W. 344.

34

DIBELL, J.

The defendant was convicted of robbery in the first degree committed on January 12, 1929, at Minneapolis. He appeals from the judgment.

■ The indictment alleges that on the day stated he robbed Joseph V. Proulx of $20. There is evidence tending to show that on the night of January 12, 1929, the defendant and another, both armed, came into the store of Proulx. There were in the store Proulx, his wife, and one Healy, a customer. One of the two men, not the defendant, gave his attention to Proulx and Healy. The other looked after Mrs. Proulx. She identified the defendant with positiveness, although some period had passed since the robbery. Proulx and Healy were unable to identify him.

The defendant denies the commission of the crime. He denies that he was at the place of the robbery. He claims that he was at the time in a different portion of the city with a young woman attending a show. It was a Saturday night. The young woman to some extent supports his claim. Neither of them is sure about the date. There is nothing in their testimony compelling the jury to find that the defendant was not at the place of the robbery in accordance with the testimony of Mrs. Proulx. From the nature of things, the only defense the defendant could have was his denial that he committed the robbery and substantive proof that he was elsewhere. The whole question was one of identification for the jury. His claim, urged here earnestly, that he had lived in the community for a long time and was known, and would not likely commit a crime there, was for the jury for such consideration as it chose to give it.

The defendant has been convicted of crime several times, and under our statute his convictions, if he were a witness, could be shown as bearing on his credibility. On the cross-examination of the state's witnesses, before the defendant became a witness, his former convictions were shown. His history was bad. In 1920 he pleaded guilty to receiving stolen property and was put on probation for six months. He was convicted in Cincinnati for the

violation of the Dyer act, and was sentenced to 15 months in the federal penitentiary at Atlanta and served 12 months. In April, 1926, he was convicted in Minneapolis of grand larceny for stealing property from a lake cottage, received a five-year sentence, and served two years. He was released on parole on May 19, 1928. He was arrested in April, 1929. He was kept in jail a few days and then returned to the state prison as a parole violator. He served about seven months. He was convicted of robbing a store on February 18, 1929, during the period of his parole and sentenced to the penitentiary. On appeal his conviction was reversed because of improper evidence received and improper remarks to the jury by the prosecutor for the state. State v. Stockton, 181 Minn. 566, 233 N. W. 307. The case was not retried. Instead he was indicted for the robbery of January 12, 1929, the one here involved.

■ The defendant claimed that he kept a diary in which his goings and comings were shown. In the course of the state's case and on cross-examination of one of its witnesses, an officer, this occurred:

"You were served with a subpoena by the defendant in this case ordering you to produce a diary belonging to the defendant which was in the hands of the police department showing his whereabouts on or about January 12, 1929, were you not? Were you served with that subpoena?

Mr. Skahen: "Did you get such a paper?

A. "I got a subpoena.

Q. "That subpoena ordered you to bring in a diary?

Mr. Skahen: "Objected to as incompetent, irrelevant, immaterial, not proper cross-examination, or the best evidence.

"Objection sustained.

Q. "Have you that subpoena with you?

A. "No.

Q. "Have you brought in that diary?

Mr. Skahen: "That is objected to as incompetent, irrelevant, and immaterial whether he brought it in or not. Improper cross-exam-

ination. Don't know that he has even got it. Let him prove that on his own case, Your Honor.

"Objection sustained.

"Exception by defendant."

The witness had given no testimony relative to a memorandum. The questions put were not proper on cross-examination. If there was a memorandum it was to be put in evidence on the defendant's case. The ruling was technically correct.

Another officer, who it was claimed took the diary from the defendant's desk at the time that admittedly he took other things, called by the defendant, failed to remember taking a diary. He was frank and admits that if there was a diary he might have taken it. On his own examination the defendant testified:

Q. "Did you keep a diary?

A. "I did.

Q. "During the fall of 1928 and the spring of 1929?

A. "I kept a diary of every day.

Q. "How did you keep that diary?

Mr. Skahen: "Objected to as immaterial.

"Objection sustained.

Q. "Did that diary show who you were with and where you were?

Mr. Skahen: "Wait.

A. "It did.

Mr. Burke: "I haven't finished the question.

Mr. Skahen: "You have been on the stand enough times to know you should wait until I get a chance to object and don't inject your answer. I move that be stricken out.

The Court: "It may be stricken.

Q. "Did that diary show where you were and who you were with on January 12, 1929?

Mr. Skahen: "That is objected to as incompetent, immaterial, and not the best evidence.

"Objection sustained.

Q. "When did you last see this diary you speak of?

Mr. Skahen: "Objected to as immaterial.

The Court: "He may answer.

A. "I saw it, I should judge, the day after I was arrested, April 26, 1929, down in Mr. Meehan's office in the presence of Mr. Meehan and Mr. Mahoney, that I remember especially.

Q. "Where were you in the habit of keeping that diary?

Mr. Skahen: "Objected to as immaterial.

"Objection sustained.

"Exception by defendant.

Q. "Do you know how that diary come to be in Mr. Meehan's office?

Mr. Skahen: "Objected to as calling for a conclusion of the witness.

The Court: "Answer yes or no.

Mr. Skahen: "Of your own knowledge.

Q. "Do you know how it happened to be there?

A. "I saw it there.

Q. "Well, do you know how it happened to be there?

A. "Nothing except what was told to me."

If the defendant kept a diary in which he recorded his daily doings it was important. It might have helped or hurt him, depending upon the showing or absence of a showing as to the events of January 12, 1929. We cannot say that there was error appearing of record relative to it. It was out of place when it was sought to get it before the jury at first. It does not appear that the officer called later knew of it or had it in possession. There was no offer of proof of its contents. It would seem more fair, as the record now is, if the defendant had been aided more and obstructed less in an effort to find its whereabouts and contents if it existed. But there was no substantial error upon which to predicate a reversal.

We find no error relative to the fact that a gun was found in the possession of the defendant. Neither is there tangible error in reference to the picture of Ingve, referred to as Invie in the appeal which resulted in a reversal (State v. Stockton, 181 Minn. 566, 568, 233 N. W. 307) nor in the reference to Bard. The reversal was

because of the reference to the association of the defendant with criminals and the charge in the address of the prosecutor that he associated with murderers and thieves. These two, Ingve and Bard, might have been left out of the case, but the defendant was in part at least responsible for introducing them. We see no substantial prejudices.

The state congratulates itself on a particularly fair prosecution of the defendant entitling it to commendation. We do not share its view, but we find nothing so substantially wrong as to justify a new trial. And it may be said that the defendant in the earnestness of his defense confused the trial by his constant insistence 'that he should have disclosures, and the production of papers by the officers, not shown to be admissible in evidence or of consequence to his defense.

The charge of the court was clear and fair, without a suspicion of prejudice, and brought the issues to the jury in a helpful and commendable way. No objection was made to it then nor is there now.

Judgment affirmed.